IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK08-83159-TJM |
| | ) | |
| HAROLD McCORMICK, | ) | CH. 7 |
| | ) | |
| Debtor. | ) | |
| JOHN ZAPATA, | ) | ADV. NO. A09-08014-TJM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAROLD McCORMICK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Trial was held in Lincoln, Nebraska, on June 10, 2010, on Plaintiff's complaint objecting to discharge of Debtor (Fil. #1). Brian J. Adams and Terry R. Wittler appeared for Plaintiff John Zapata ("Zapata"), and Gene T. Oglesby appeared for Debtor-Defendant Harold McCormick ("McCormick"). The parties were given the opportunity to provide written closing arguments, which have now been submitted, and this matter was taken under advisement.

Zapata asserts that McCormick should be denied a discharge under 11 U.S.C. § 727(a) because of, among other things, transfers of assets both before and after the filing of the bankruptcy case with the intent to hinder, delay, and/or defraud creditors, failure to maintain records, and knowingly making false accounts in connection with the case. As discussed below, I find that McCormick should be denied a discharge.

### *Background*[1]

On March 28, 2008, Zapata, Inc. obtained a judgment from the District Court of Lancaster County, Nebraska, in the case *Zapata, Inc. v. CMR Demo Contracting, Inc., et al.*, Case No. CI02-3671, against an individual named Claudette Thomsen ("Thomsen"). That judgment was later transcribed to the District Court of Saunders County, Nebraska.

---

[1]Some of the facts discussed herein are not found in the record of this adversary proceeding, but instead are found in the records set forth in the underlying bankruptcy case of Harold McCormick, Case No. BK08-83159.

John Zapata, as the assignee of Zapata, Inc., caused the District Court of Saunders County, Nebraska, to issue garnishment summons and interrogatories to H&M Contracting ("H&M"), as garnishee, on the theory that H&M owed money to Thomsen. Apparently, H&M did not respond to the garnishment summons and interrogatories, and on July 16, 2008, Zapata filed an application to determine garnishee liability against H&M pursuant to Neb. Rev. Stat. § 25-1030. On August 4, 2008, a hearing on the application was heard by the Saunders County District Court and judgment was entered on the application in favor of "John Zapata, assignee of Zapata, Inc." and against H&M in the sum of $87,628.27. That judgment was later transcribed to the Lancaster County District Court and docketed as Case No. CI08-4991.

H&M is a sole proprietorship under which McCormick performed his demolition business. According to McCormick, Thomsen assisted him part-time with paperwork. Initially, Zapata asserted that H&M was a partnership between McCormick and Thomsen. However, as part of the trial of this adversary proceeding, Zapata's counsel informed the Court that Zapata was no longer pursuing the partnership claims and was solely pursing the § 727 discharge issue.

After obtaining his judgment, Zapata began collection efforts, including efforts to garnish amounts due to McCormick under certain demolition subcontracts and to seize tools and equipment. McCormick filed his Chapter 7 bankruptcy petition on December 10, 2008.

At trial, McCormick asserted that most of the tools and equipment with which he performed his demolition business were owned by his girlfriend, Patricia Drummond ("Drummond"). Apparently, Drummond would pay to acquire the tools and equipment and then lease those items to McCormick. A lease dated October 1, 2007, was offered and received into evidence. The lease (Fil. #32) is between Pat Drummond as lessor, and Harold McCormick d/b/a H&M Construction as lessee.

In his pleadings and in his argument to the Court, McCormick's counsel raised questions as to whether Zapata is truly the real party in interest as a purported assignee of Zapata, Inc. since no evidence of an assignment is in the record. However, the judgment is clearly in the name of John Zapata, assignee of Zapata, Inc. Further, when McCormick filed his bankruptcy schedules, he listed John Zapata in Schedule F as a judgment creditor in the amount of $87,628.27. He did not check any of the columns to indicate that the claim was contingent, unliquidated, or disputed. Granted, when identifying the judgment in Schedule F, he identified it as "[v]oid traversed garnishment judgment." Upon inquiry by this Court during the trial as to what those words meant, McCormick and his attorney were unable to provide an explanation. The language used is, at best, ambiguous. The bankruptcy case record also reflects that Zapata did file a proof of claim on December 8, 2009, asserting a judgment with interest in the amount of $88,925.29. No objection to that proof of claim has ever been filed. Accordingly, as this Court ruled in response to the oral motion to dismiss during trial, since McCormick did not identify Zapata as a disputed creditor and since no objection has ever been filed to Zapata's proof of claim, it appears that Zapata has standing to bring this action as a creditor or party in interest.

## *Discussion*

Zapata asserts that McCormick should be denied a discharge under 11 U.S.C. § 727(a). Specifically, this case was brought under subparagraphs (2)(A) and (B), (3), and (4)(A). Those sections provide as follows:

> (a) The court shall grant the debtor a discharge, unless–
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> (A) made a false oath or account[.]

In a proceeding under § 727 for denial of discharge, the burden of proof is on the objecting party to prove each element of a § 727 complaint by a preponderance of the evidence. *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002) (quoting *Korte v. United States (In re Korte)*, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)). "The denial of a debtor's discharge is a 'harsh sanction,' therefore, the provisions of 11 U.S.C. § 727(a) are 'strictly construed in favor of the debtor.'" *Id.*

To prevail on the § 727(a)(2) portion of the complaint, the plaintiff must show that (1) the debtor's actions took place within the statutory time limit, (2) the debtor took the actions with the intent to hinder, delay, or defraud his creditors; (3) the debtor himself took the actions; and (4) the debtor's actions consisted of transferring or concealing property. *City Nat'l Bank of Ft. Smith, Ark. v. Bateman (In re Bateman)*, 646 F.2d 1220, 1222 (8th Cir. 1981). There is a presumption of fraud in § 727(a)(2) cases when a debtor transfers valuable property without payment. *Cadlerock Joint Venture II, L.P. v. Sandiford (In re Sandiford)*, 394 B.R. 487, 490 (B.A.P. 8th Cir. 2008) (citing *The Abbott Bank-Hemingford v. Armstrong (In re Armstrong)*, 931 F.2d 1233, 1239 (8th Cir. 1991)). "Once a gratuitous transfer is shown, the burden then shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors." *Id.*

Section 727(a)(3) denies a discharge to a debtor who has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained.  Debtors have an affirmative duty to create records accurately documenting their financial affairs because the trustee and creditors are entitled to accurate information showing what property has passed through the debtor's hands prior to bankruptcy.  *S. Bancorp. S. v. Richmond (In re Richmond)*, ___ B.R. ___, 2010 WL 2483889, at *19 (Bankr. E.D. Ark. 2010).

That section does not contain an intent element, but rather imposes a standard of reasonableness.  The debtor is required "to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate."  *Davis v. Wolfe (In re Wolfe)*, 232 B.R. 741, 745 (B.A.P. 8th Cir. 1999) (quoting *First State Bank of Newport v. Beshears (In re Beshears)*, 196 B.R. 468, 474 (Bankr. E.D. Ark. 1996)).

Once a plaintiff has made a prima facie case, the burden shifts to the debtor to justify why the particular record was not maintained.  *Wolfe*, 232 B.R. at 745.  In determining whether the records are adequate, the court considers the debtor's education, business experience, personal financial structure, and the customary business practices regarding record-keeping in that type of business.  *Sendecky*, 283 B.R. at 764; *Duvall v. Maxey (In re Maxey)*, 410 B.R. 854, 860 (Bankr. W.D. Mo. 2009).

Section 727(a)(4) of the Bankruptcy Code denies a debtor a discharge if, in or in connection with the case, he or she knowingly and fraudulently made a false oath or account.  A false oath bars discharge in bankruptcy if it is both material and made with an intent to defraud.  *Jordan v. Bren (In re Bren)*, 122 Fed. Appx. 285, 286 (8th Cir. 2005) (citing *Korte*, 262 B.R. at 474.  Reckless disregard for the truth will support a finding of fraudulent intent for the purpose of denying a debtor his discharge under § 727(a)(4)(A).  *Bank of Bennington v. Thomas (In re Thomas)*, ___ B.R. ___, 2010 WL 2486006 (B.A.P. 8th Cir. June 22, 2010) (citing *Korte* at 474).

To deny a debtor a discharge under this subparagraph, a plaintiff must establish that:  (1) the debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter.  *Sullivan v. Bieniek (In re Bieniek)*, 417 B.R. 133, 138 (Bankr. D. Minn. 2009) (citing *Korte*, 262 B.R. at 474).

Zapata's first argument is that discharge should be denied under § 727(a)(2)(A).

Section 727(a)(2)(A) requires that four elements must be proven:  (1) a transfer of property occurred; (2) the property was property of the debtor; (3) the transfer occurred within one year of the filing of the petition; and (4) at the time of the transfer, the debtor had the intent to hinder, delay, or defraud a creditor.

*Matter of Armstrong*, 97 B.R. 565, 568 (Bankr. D. Neb. 1989).  In support, Zapata produced bank records showing numerous cash transfers or withdrawals between April 2008 and December 2008 by McCormick, Drummond, or Thomsen.  While it is true that McCormick provided little or no

explanation for most of the withdrawals, the most concerning of the withdrawals was the sum of $1,350.00 on December 8, 2008. His Chapter 7 bankruptcy case was filed just two days later and no disclosures or explanations were provided regarding what became of those funds withdrawn two days earlier. More telling is that the day after the withdrawal by McCormick, Drummond opened a new account in her own name into which she deposited $1,150.00. No evidence was provided as to the source of that deposit. As it turned out, Drummond used that new account to write a check to McCormick's bankruptcy attorney for payment of filing fees. The only logical conclusion from those facts is that the funds deposited to Drummond's account were McCormick's funds that should have been scheduled as assets of the bankruptcy estate.

Zapata also believes that McCormick violated § 727(a)(2)(B) by transferring certain contract rights. In October and November 2008, McCormick entered into two demolition subcontracts with Sampson Construction. One contract was in the total amount of $46,450.00 and the other was in the total amount of $55,575.00. On November 24, 2008, McCormick made initial payment applications on each contract, one for $4,500.00 and one for $5,400.00. Those applications were submitted prior to bankruptcy filing and were, therefore, receivables due to McCormick that should have been disclosed on his bankruptcy schedules. It seems the payment applications were paid by Sampson post-petition, but McCormick's testimony with regard to such payments was confusing, at best.

At various times, McCormick testified that Sampson paid the funds to him, that he cashed the check, and paid his laborers. Other times, McCormick testified that Sampson used the money to pay his laborers directly. Even after questioning by the Court, it remained unclear as to whether Sampson paid the money to McCormick or directly to laborers. Sampson either terminated or threatened to terminate the contracts, so McCormick kept performing work individually under the contracts until February 2009, when he formed a new limited liability company called Heartland Demolition, LLC. Thereafter, McCormick entered into a new contract with Sampson under the name of the limited liability company. Although forming a new company and taking over contracts might seems suspicious, it would not necessarily cause denial of discharge since payment for services to be performed post-petition under the contracts would not be property of the Chapter 7 bankruptcy estate. However, the right to receive the initial draw requests, and the retainage, were property of the bankruptcy estate that was not disclosed and was transferred or spent without Court approval.

Zapata further asserts that discharge should be denied under § 727(a)(3) due to the failure to keep books and records from which McCormick's financial condition or business transactions might be ascertained. There are numerous instances of transfers or withdrawals of cash to Thomsen and/or Drummond in the year prior to bankruptcy filing. McCormick testified that those transfers were repayment of loans or were otherwise due to those individuals; however, he failed to produce any documentation at all regarding any such indebtedness. Further, neither Drummond nor Thomsen testified at trial.

In fact, besides the two subcontracts, the only purported business record that McCormick seemed to maintain was the lease dated October 1, 2007, between Drummond and himself. Attached to that lease is a list of personal property that McCormick used in the operation of his business. At

-5-

trial, McCormick acknowledged that some of the items listed on that exhibit were not really part of the lease and that it was simply a mistake to include them.  However, his explanation failed to adequately explain how the list of personal property attached to the lease dated October 1, 2007, and created on that date, included a vehicle (a 1999 Chevrolet Silverado pickup) that was not even acquired until November 2008.  Apparently, McCormick must be taking the position that the truck was added to the lease after it was acquired, but the lease payment, terms, and other provisions did not change despite the addition.  More interesting is the fact that McCormick insisted the truck was paid for by Drummond and acquired by Drummond, even though the banking records clearly showed that payment was made by a check from McCormick's bank account.

McCormick's defense in this case appears to be that he was just an unsophisticated guy trying to make a living.  That explanation is simply not sufficient and McCormick's testimony was simply not credible.  No records were produced to prove that Drummond actually owned the business assets listed on the lease rather than McCormick.  McCormick did testify that cash transfers to Drummond and/or to Thomsen were to pay for equipment or to repay loans, but that testimony would indicate the equipment is owned by McCormick.  McCormick also testified about who paid for and who owned certain vehicles, but no certificates of title were put into evidence.  The list attached to the lease was clearly created and/or supplemented at a time other than the date it was purportedly signed. The demolition subcontracts also present a questionable situation. When Zapata began garnishing the progress payments, the contract was conveniently terminated and a new contract was later entered into with McCormick acting through a new limited liability company. While that may have been legitimate as far as future work is concerned, McCormick failed to schedule his outstanding receivables from those contracts and provided confusing testimony as to what became of the money paid on those receivables.

A debtor who enters bankruptcy court to receive a discharge of debts is subject to a clearly defined set of rules governing pre- and post-bankruptcy conduct and disclosure.  McCormick's "unsophisticated businessman" defense may explain one or more of the issues raised by Zapata, but taken as a whole, the inescapable conclusion is that McCormick transferred assets both pre- and post-petition, and failed to disclose assets and transfers of assets, with the intent to hinder, delay, or defraud creditors.

While "courts are often understanding of a single omission or error resulting from innocent mistake," they tend to be troubled by misinformation of a scope that suggests either recklessness or willful intent to mislead the court and creditors.  *Bren*, 122 Fed. Appx. at 288 (quoting *Jordan v. Bren (In re Bren)*, 303 B.R. 610, 614 (B.A.P. 8th Cir. 2004)).  In *Bren*, the Court of Appeals stated, "The sizeable nature of the Brens' omissions" – including vehicles and $185,000 in payments – "was troubling and suggested recklessness."  *See also Thomas*, 2010 WL 2486006, at *3 (in affirming the bankruptcy court, the B.A.P. stated, "Regarding the finding of intent, the court noted several omissions . . . , and the court inferred intent from the recklessness and magnitude of the omissions.")

Accordingly, McCormick's discharge should be denied.  Separate judgment to be entered.

DATED:  July 27, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Brian J. Adams/Terry R. Wittler
    *Gene T. Oglesby
    Thomas D. Stalnaker
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.